Merchants & Manufacturers Bank of Ellisville, Miss.
*v.* Biddy, et al.

No. 39474          February 14, 1955          77 So. 2d 829

*Stone & Stone,* Coffeeville, for appellant.

*Marshall Perry,* Grenada, for appellees.

ARRINGTON, J.

On July 27, 1951, Oliver-Lilly Motor Company, apparently a corporation, and J. H. Biddy & Sons, a partnership, obtained in the Circuit Court of Grenada County, Mississippi, separate judgments against Gulf States Construction Company, a corporation, hereinafter referred to as Gulf, for the respective principal sums of $634.49 and $278.61, with six percent per annum interest on said sums until paid, and all costs.

On September 18, 1951, said judgment-creditors caused writs of garnishment to issue on said judgments to the Merchants and Manufacturers Bank of Ellisville, Mississippi. The Bank made answer to the garnishments as hereinafter set out.

On July 27, 1953, the learned trial judge in this cause struck the answer of the Bank, reciting in the order as

the reason therefor, that "said answer being insufficient and failing to meet the requirements of the law in such matters." On January 26, 1954, the said court rendered judgment in favor of the said garnishers for the respective amounts above stated. The Bank has appealed from the foregoing action of the trial judge, contending that the court was not justified in striking its answer, and that the rendition of judgments against it was error.

The two garnishment proceedings were combined and heard as one in the lower court, and are so considered in this Court by agreement of the parties.

The questions confronting us call for a review of the proceedings. In 1949, M. R. Thomason of Montgomery, Alabama, was under contract to do certain construction work at Grenada Dam in this State. During that year, he sublet to Gulf States Construction Company, Inc., a contract to do the loading, hauling, and placing of clay gravel sub-ballast necessary to the relocation of the Illinois Central Railroad tracks. On July 26, 1949, the Bank notified Thomason in writing that Gulf had assigned to it all money which might be owing Gulf under its contract with Thomason. On July 28, 1949, Thomason wrote the bank giving his assent to this assignment. On August 8, 1950, Thomason mailed to the Bank a certified check for the sum of $6,810.91, payable to the Bank, Gulf, and the National Casualty Company, Inc., presumably Gulf's bondsman on the construction job, on the back of which check was a writing by which, when the check was endorsed and cashed, all the payees therein released Thomason from all liability under his contract with Gulf.

That was the status of the matter when the garnishers herein obtained their judgments on July 27, 1951. On September 21, 1951, the writs of garnishment here involved were issued out of the Circuit Court of Grenada County. These writs were in the usual form for this State, directing the garnishee to answer under oath,

(1) whether it was indebted to, or (2) had in its possession property, or effects of, the Gulf States Construction Company, Inc., and whether it knew or believed (3) that any other person was so indebted to Gulf, or (4) had effects of such company in his hands or under his control. Section 2788, Mississippi Code of 1942. The writ was returnable the fourth Monday in January, 1952.

On November 21, 1951, the Bank prepared, and the president thereof swore to, its answer, but it was not filed until January 2, 1952. It simply denied that the Bank was indebted to, or had in its possession any property or effects of Gulf, and denied it knew, or believed, anyone else was so indebted and had in its possession property or effects of Gulf.

On January 22, 1952, the garnishers filed a contest of this answer. It alleged that prior to the service of the garnishment writs, the Bank had received the before mentioned check from Thomason, and that the check was received under an agreement by the Bank to pay certain creditors of Gulf, including the claims of the gar-nishers, and that the proceeds of this check belonged to Gulf.

In July, 1952, Thomason gave his deposition, in which he testified to the subletting of the work to Gulf in 1949; to receipt of a letter from the Bank on July 26, 1949, notifying him that Gulf had assigned to the Bank all moneys which might become owing to it under its subcontract; to his assent to such assignment, and to his mailing on August 8, 1950, of the check for $6,810.91 to the Bank, payable to the Bank, Gulf, and the National Casualty Company, Inc., which check contained a written release of Thomason from all further liability to any and all of the payees therein.

On January 30, 1952, the case was continued until the next term of the court. Sometime prior to August 1, 1952, the garnishers made a motion for a subpoena duces tecum against the Bank, and on October 27, 1952, the

trial judge granted an order for the issuance of that writ.

On October 31, 1952, the clerk of the Circuit Court, pursuant to the court's order, issued a subpoena duces tecum to the bank. The writ directed the bank to produce before the court on the fourth Monday of January, 1953 the "instrument or agreement" under which Thomason sent the check to the bank "as testified to by M. R. Thomason in his deposition on file herewith," and also to produce the Bank records showing "what happened to said check or the proceeds thereof. . . ." The Bank filed an answer to the subpoena on January 24, 1953. It said it did not receive the Thomason check under any agreement as "testified to by M. R. Thomason," that the Bank had no agreement under which Gulf was entitled to any of the proceeds of the check sent the Bank by Thomason, and that the bank records did not disclose any handling of the check by the Bank. On May 28, 1953, the Bank filed an additional answer to both the writs of garnishment and the subpoena duces tecum. It said the Thomason check had never been cashed; that the Bank had been unable to cash the check because the other two payees would not endorse it; and that the Bank had advanced to Gulf more than the amount of the check, and that Gulf still owed the Bank, and the Bank was entitled to the full amount of the check if it is ever paid. The answer stated that, since nothing has been realized on the check, there were no bank records reflecting the manner of its handling, and that the check had been placed in the hands of an attorney for collection without any success. All answers of the Bank were sworn to by its president.

On July 9, 1953, the garnishers filed an additional contest to the answers of the Bank, both to the writs of garnishment and the subpoena duces tecum. It alleged that the response to the duces tecum was insufficient

and did not comply with the orders of the court and that the additional answer contradicts the prior answer.

On July 27, 1953, the trial court entered an order striking the answers of the Bank, "said answer being insufficient and failing to meet the requirements of the law in such matters." The case was set for trial on July 30, 1953. On that day the judge entered an order giving the Bank thirty days in which "to bring into this court the effects shown to be in the hands of the Bank and present their claim thereto, if any."

On January 26, 1954, the court, without a trial, rendered the judgments against the Bank for the amounts as set out above. The judgment recites the issuance of the writs of garnishment, answers of the Bank, garnishers' contest thereof and their motion for judgment, and all other pleadings therein, the order of the court to the Bank to produce into court the check sent by Thomason to it, which it has failed to do, and that counsel for the Bank had declined to produce the check or plead further, and that the garnishers have a lien upon said check. Personal judgment is then given against the Bank in favor of garnishers for the principal and interest and costs as adjudicated to them on July 27, 1951.

The basis of the judgment is somewhat uncertain. The judgment states the matter was considered, among other things, upon "answer and amended answers of the garnishee," yet these answers had been stricken. The answers set out a defense. They stated the Bank owed Gulf nothing; that Gulf owed the Bank. It could not cash the check because the other two payees would not endorse it.

■■■ ■ If the garnishee admits indebtedness to, or the possession of effects of, the defendant, and has not paid the debt or delivered the effects to the sheriff, judgment may be entered against him for the amount of the debt, or for the property or its value, not to exceed the amount

of plaintiff's demand. Section 2797, Mississippi Code of 1942. But here the Bank denied it owed Gulf anything, but on the contrary, said Gulf owed it. According to the answer, Gulf had no interest in the proceeds of the check. Of course, that might not have been true but its truth was a matter to be determined by trial. Too, the limit of the judgment would have been the value of the check, which, under the disclosed circumstances, appears to have been worthless. Section 2797, supra. If a garnishee, duly summoned, fails to answer, the court may render judgment against him for the amount of plaintiff's demand. Section 2798, Mississippi Code of 1942. Neither of these situations confronted the lower court. The answers of the Bank explained the circumstances under which it came into the possession of the check, and asserted a superior claim thereto as against the judgment debtor, and fully explained the reason why it could not be cashed, which reason was beyond the power of the Bank to remove.

The recitals in the judgment indicate that one reason, if not the main reason, the answers of the Bank were stricken and judgments rendered against it, was because the Bank declined to obey the subpoena duces tecum and bring into court the check. The Bank should have complied with the mandate of that writ and brought the check into court. However, while such refusal to comply with the writ might subject the responsible party to punishment for contempt, it is not a sufficient basis for the rendition of judgments against it for the debts owing by Gulf to the garnishers. The rights of the parties in the check, or its proceeds, were matters to be determined on the trial of the case on its merits, insofar as this proceeding affords a means for so doing.

Reversed and remanded.

*Roberds, P. J.,* and *Lee, Holmes,* and *Ethridge, JJ.,* concur.